USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/16/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
    UNITED STATES OF AMERICA,

                -against-                             18 Cr. 787 (LGS)

    JONATHAN DOBEY,                            OPINION & ORDER
                              Defendant,
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Defendant objects to the proposed base offense level of twenty-four in the Presentence Report because it is based on the conclusion that "the defendant committed . . . the instant offense subsequent to sustaining at least two felony convictions of . . . a crime of violence." U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2K2.1(a)(2) (U.S. SENTENCING COMM'N 2019). Defendant's objection is sustained because, as explained below, his prior convictions are not "crimes of violence" under applicable case law. Accordingly, Defendant's base offense level is fourteen and not twenty-four.

I.    BACKGROUND

       On January 22, 2019, Defendant pleaded guilty to a one-count indictment, charging possession of a firearm, after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) and (2). The Government's so-called *Pimentel* letter asserts that, for the purpose of computing the Guidelines recommendation, the base offense level is twenty-four because Defendant has two prior felony convictions that qualify under the Guidelines as "crimes of violence." *See* U.S.S.G. § 2K2.1(a)(2); *United States v. Pimentel*, 932 F.2d 1029, 1034 (2d Cir. 1991). For the same reason, the Presentence Investigation Report also calculates a base offense level of twenty-four. Defendant objects to the classification of his prior convictions for first-

degree manslaughter, *see* N.Y. PENAL LAW ("N.Y.P.L") § 125.20(01) ("§ 125.20(01)"), and attempted second-degree assault, *see* N.Y.P.L. § 120.05(07) ("§ 120.05(07)").

## II. LEGAL FRAMEWORK

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Delacruz*, 862 F.3d 163, 178 (2d Cir. 2017) (quotation marks omitted). "The [G]overnment bears the burden of showing that a prior conviction counts as a predicate offense for the purpose of a sentence enhancement" under the Guidelines. *United States v. Moreno*, 821 F.3d 223, 227 (2d Cir. 2016) (quotation marks omitted).

For purposes of § 2K2.1 of the Guidelines, a "crime of violence" is defined in § 4B1.2(a) and its Application Note 1. Section 4B1.2(a) provides that a crime of violence is any federal or state offense that is punishable by imprisonment for more than a year and is a crime described in the so-called "Force Clause" or so-called "Enumerated Offenses Clause." *See* U.S.S.G. §§ 4B1.2(a)(1) & (2). The Force Clause includes any offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The Enumerated Offenses Clause, as relevant here, includes "voluntary manslaughter" and "aggravated assault." U.S.S.G. § 4B1.2(a)(2). Application Note 1 to § 4B1.2 states that the term "crime of violence" "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n. 1 (U.S. SENTENCING COMM'N 2019).

The parties do not dispute that under New York law, first-degree manslaughter and second-degree assault are punishable by imprisonment for more than a year. *See* N.Y.P.L. §§ 125.20 (first-degree manslaughter), 120.05 (second-degree assault), 70.02(1)(a),(c) (sentences

2

for Class B and Class D felonies). Accordingly, the first prong of § 4B1.2(a) is met.

To determine whether the second prong is met -- whether the prior felony conviction was a crime of violence -- courts employ the "categorical approach" where the underlying state crime has a single set of elements, or as here, the state crime has multiple subsections with varying elements but there is no dispute which subsection the defendant was convicted of violating. *United States v. Brown*, 322 F. Supp. 3d 459, 461 (S.D.N.Y. 2018) (citing *United States v. Jones*, 878 F.3d 10, 15-16 (2d Cir. 2017)).

Courts applying the categorical approach "confine [their] inquiry to the legal elements of the state statute without at all considering the facts of the underlying crime." *Jones*, 878 F.3d at 16. To determine whether the underlying state offense was a crime of violence, the categorical approach first considers "the minimum conduct necessary for a conviction of the predicate offense" and then determines whether that minimum conduct "amounts to a crime of violence." *United States v Hill*, 890 F.3d 51, 56 (2d Cir. 2018) (applying categorical approach to hold that Hobbs Act robbery constitutes a "crime of violence" under 18 U.S.C. § 924(c)(3)(A)). If that minimum conduct does not constitute "a crime of violence," then a conviction under the state statute does not qualify as a "crime of violence" under Sentencing Guidelines section 2K2.1. *Brown*, 322 F. Supp. 3d at 461; *see also Hill*, 890 F.3d at 56. "There must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence." *Hill*, 890 F.3d at 56 (internal quotation marks omitted).

To determine whether the state offense is within the Force Clause, the categorical approach asks whether a conviction under the state statute necessarily "has as an element the use, attempted use, or threatened use of physical force" as provided in the Force Clause. *See United States v. Castleman*, 572 U.S. 157, 168 (2014).

3

To determine whether the state offense is one of those in the Enumerated Offenses Clause, the categorical approach compares the legal elements of the defendant's prior crime with the legal elements of the generic federal counterpart listed as an enumerated offense. *United States v. Pereira-Gomez*, 903 F.3d 155, 161-64 (2d Cir. 2018) (defendant's prior New York conviction for attempted robbery was not a crime of violence under the Enumerated Offenses provision of the Guidelines); *see also Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016) (stating that, for sentencing purposes under the Armed Career Criminal Act ("ACCA"), a state burglary statute was not a predicate offense because it criminalized more conduct than generic burglary).[1] If the prior crime, based solely on an analysis of its elements, criminalizes the same conduct or less conduct than the generic federal crime, then the prior crime is categorically a crime of violence. However, if the prior crime criminalizes "*any* conduct" that the federal crime does not, then it is not categorically a crime of violence, and cannot be a predicate offense for federal sentencing enhancement. *See Jones*, 878 F.3d at 16 (italics in original). Whether a defendant actually engaged in violence in perpetrating the state crime, and whether the defendant's actual conduct is within the generic federal offense, are irrelevant. "[T]he mismatch of elements saves the defendant." *Mathis*, 136 S. Ct. at 2251.

---

[1] The Second Circuit has instructed the application of "the same categorical approach irrespective of whether the enhancement is pursuant to the ACCA or the [United States Sentencing Guidelines]." *United States v. Walker*, 595 F.3d 441, 443 n.1 (2d Cir. 2010). *See also Singh v. Barr*, -- F.3d --, No. 15-1018, 2019 WL 4616711, at *4 (2d Cir. Sept. 24, 2019) ("[A]s we have explained elsewhere, 'the identical language of the [Force Clause] of [the ACCA] and the [Guidelines] means that cases interpreting the clause in one statute are highly persuasive in interpreting the other statute.'") (quoting *Stuckey v. United States*, 878 F.3d 62, 68 n. 9 (2d Cir. 2017)).

## III. DISCUSSION

### A. First-Degree Manslaughter Under New York Law

Defendant was convicted of first-degree manslaughter in 1997 under § 125.20(01). This provision states that a person is guilty of manslaughter in the first degree when, "[w]ith the intent to cause serious physical injury to another person, he causes the death of such person or of a third person." § 125.20(01). As explained below, § 125.20(01) is not a crime of violence.

#### 1. The Force Clause

First-degree manslaughter under § 125.20(01) is not a crime of violence under the Force Clause because the minimum conduct for a § 125.20(01) conviction does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a). Under New York law, a defendant can commit first-degree manslaughter when he "fail[s] to perform" a "nondelegable affirmative duty." *See People v. Steinberg*, 595 N.E.2d 845, 847 (N.Y. 1992); *id.* ("[T]he failure to obtain medical care can . . . support a first degree manslaughter charge"); *accord Brown*, 322 F. Supp. 3d at 463.

A crime that can be based on an omission does not satisfy the Force Clause, which requires actual, attempted or threatened "use of physical force." In *Chrzanoski v. Ashcroft*, the Second Circuit interpreted 18 U.S.C. § 16(a), which has nearly identical language as U.S.S.G. § 4B1.2(a)(1). 327 F.3d 188, 191, 195 (2d Cir. 2003) (18 U.S.C. § 16(a), defines a "crime of violence" as including "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"). The court held that a state crime of assault that could be based on "guile, deception, or even deliberate omission" was not an offense that required the use of force. *Id.*; *compare Johnson v United States*, 559 U.S. 133, 140 (2010) (holding that, in defining "violent felony," "physical force" means "violent force")

5

with *Castleman*, 572 U.S. at 167-71 (holding that, in defining "misdemeanor crime of domestic violence, "use of physical force" under 18 U.S.C. 922(g)(9) means something less than "violent felony" and can include indirect action such as poisoning).[2] Accordingly, manslaughter in the first degree is not a crime of violence under the Force Clause. *Accord United States v. Scott*. No. 6 Crim. 988, 2017 WL 2414796, at *2-3 (S.D.N.Y. June 2, 2017) (holding that first-degree manslaughter is not a crime of violence under the ACCA because it "can be committed . . . by omission, and thus without using force") (app. pending at Case No. 18-163).

Contrary to the Government's argument, no binding authority holds that "use of force" statutes encompass omissions, in contrast to direct and indirect action. *Castleman* states that "physical force," for purposes of 18 U.S.C. § 922(g)(9), can include the indirect application of force. *Castleman*, 572 U.S. at 167-71. The Supreme Court offered several examples of the indirect application of physical force: administering a poison, infecting one with a disease, shooting a gun, and even shining a laser beam in another's eyes. *Id*. The Court stated that just because "the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter." *Id*. at 171. The Supreme Court's reference to the "application" of force, its list of examples, and its suggestion that "physical force" can be either direct or indirect action are consistent with the conclusion that "use of force" does not encompass the failure to act. Following *Castleman*, the Second Circuit has held that "use of force" encompasses both direct and indirect action, but has not held that use of force includes failing to perform an affirmative

---

[2] *Chrzanoski* remains good law for the proposition that a state crime that can be based on an omission is not one that necessarily involves the use of physical force. *See Chrzanoski*, 327 F.3d at 195. *Chrzanoski* has been abrogated only to the extent that, after *United States v. Castleman*, "physical force encompasses even its indirect application." *Villanueva v. United States*, 893 F.3d 123, 130 (2d Cir. 2018) (internal quotation marks omitted) (citing *Hill*, 890 F.3d at 58-60) (quoting *Castleman*, 572 U.S. at 169); *accord Banegas Gomez v. Barr*, 922 F3d 101, 108 (2d Cir. 2019).

duty. *See, e.g.*, *Villanueva*, 893 F.3d at 128-29.

The Government also asserts that the Second Circuit, in *United States v. Hill*, rejected that threatening to withhold vital medicine or to poison a victim does not constitute the use of force. In *Hill*, the court held that a Hobbs Act robbery is a crime of violence under the Force Clause. *Hill*, 890 F.3d at 60. In doing so, the Court rejected that these hypothetical scenarios could establish that a Hobbs Act robbery is a crime of violence because the defendant had not shown a "'realistic probability' that the Hobbs Act would reach" such conduct. *Id*. at 58-59. The Court then analyzed whether threatening the *indirect* use of force, such as by poisoning, was sufficient to constitute the threat of physical force and concluded that it was after *Castleman*. *Id*. at 60. Finally, though the Government cites *Thompson v. Barr*, that decision has been withdrawn and thus bears no authority. *Thompson v. Barr*, 924 F.3d 70 (2d Cir. 2019), *opinion withdrawn*, No. 17-3494, 2019 WL 2618128 (2d Cir. May 30, 2019).

### 2. The Enumerated Offenses Clause

First-degree manslaughter as defined in § 125.20(01) is not a crime of violence under the Enumerated Offenses Clause because the state law criminalizes conduct that is not "voluntary manslaughter" as provided in the Guidelines. The Second Circuit requires that the "generic" definition of the enumerated offense be used for the categorical approach analysis. *See United States v. Castillo*, 896 F.3d 141, 150 (2d Cir. 2018). "[T]he generic definition of an offense is the contemporary understanding of the term," which includes how the term is used in the criminal codes of most states, and how the term is used in "other sources, including federal criminal statutes, the Model Penal Code, scholarly treatises[,] legal dictionaries" and how the term was used at common law. *Id*. (citing *Taylor v. United States*, 485 U.S. 575 (1990)).

"Voluntary manslaughter in most jurisdictions consists of an *intentional homicide*

committed under extenuating circumstances which mitigate, though they do not justify or excuse, the killing." LaFave, 2 Subst. Crim. L. 15.2 (3d ed. 2019) ("LaFave") (emphasis added) ("The principal extenuating circumstance is . . . a state of passion"). 40 Am. Jur. 2d Homicide § 45 ("A conviction for voluntary manslaughter requires that the defendant acted either with an intent to kill or with conscious disregard for life, i.e., the mental state ordinarily sufficient to constitute malice aforethought.") *United States v. Leaverton*, 895 F.3d 1251, 1257 (10th Cir. 2018) ("Most jurisdictions hold that first degree or voluntary manslaughter involves an intent to kill").[3]

Section 125.20(01) provides that a person is guilty of first-degree manslaughter when, "with intent to cause serious physical injury to another person, he causes the death of such person or of a third person." § 125.20(01). The intent to cause serious physical injury is insufficient for the federal generic offense. Because the minimal conduct under state law falls short of the enumerated offense of voluntary manslaughter, first-degree manslaughter is not a crime of violence under the Enumerated Offenses Clause. *See Jones*, 878 F.3d at 16 (If the prior offense criminalizes "*any* conduct" that the federal crime does not, then the prior offense may not be a predicate offense for federal sentencing enhancement purposes).

The Government argues that the Second Circuit has already defined the generic definition of voluntary manslaughter to encompass New York's first-degree manslaughter crime, citing *United States v. Castillo*, 896 F.3d at 153-54. The argument is incorrect. In *Castillo*, the Second Circuit held that § 125.20(01) fits within the generic definition of "manslaughter." *Castillo* applies the generic definition of "manslaughter" rather than "voluntary manslaughter" because it

---

[3] Federal criminal law defines voluntary manslaughter at 18 U.S.C. § 1112(a), as "the unlawful killing of a human being without malice upon a sudden quarrel or heat of passion," which requires proof of either intent to kill or recklessness with extreme disregard for human life. S3 Modern Federal Jury Instructions-Criminal 8.109 (2019). The Model Penal Code, at § 210.3(1)(b) does not distinguish between voluntary and involuntary manslaughter.

8

was applying the November 1, 2015, edition of the Sentencing Guidelines, and its now defunct "residual clause," which has commentary that includes "manslaughter" (not "voluntary manslaughter) among "[c]rime[s] of violence." In 2016, the Sentencing Commission removed the residual clause. The 2018 edition -- which is relevant here -- includes only the narrower crime of "voluntary manslaughter" among the enumerated offenses of crimes of violence. Of "voluntary manslaughter" *Castillo* states that, at common law, "[v]oluntary manslaughter was the intentional killing 'in the heat of passion upon adequate provocation.'" *Id*. at 151 (citing LaFave § 15.4) Accordingly, the definition of "manslaughter" stated in *Castillo* is not applicable here.

### B. Attempted Second-Degree Assault Under New York Penal Law

In 2002, Defendant was convicted of Attempted Assault in the Second Degree. Section 120.05(07) states that a person is guilty of assault in the second degree when, "while confined in a correctional facility . . . with intent to cause physical injury to another person, he causes such injury to such person or a third person." § 120.05(07)

#### 1. The Force Clause

Assault under § 120.05(07) is not a crime of violence under the Force Clause. Courts frequently analyze "crime of violence" for Guidelines purposes in the same way as "violent felony" under the ACCA. *Singh*, -- F.3d --, No. 14-1018, 2019 WL 4616711, at *4 (2d Cir. Sep. 24, 2019); *United States v. Evans*, 924 F.3d 21, 29 n. 4 (2d Cir. 2019). A crime must have as an element 'serious physical injury' to be a violent felony under the ACCA. *Villanueva*, 893 F.3d at 130 n. 6 (2d Cir. 2018) (noting that a state assault offense "required intent to cause only 'physical injury,' not 'serious physical injury'" and the "latter element is necessary to make [the] offense a 'violent felony'"). Because § 120.05(07) requires intent to cause only "physical

injury," it is not a crime of violence under the Force Clause.

In *Singh,* the Second Circuit held that assault with a deadly weapon or dangerous instrument with intent to cause physical injury, under N.Y.P.L. § 120.05(02), is a crime of violence. *Singh*, -- F.3d --, 2019 WL 4616711, at *3. The court assumed without deciding that the difference between intent to cause "serious physical injury" instead of just "physical injury" "could be material, [but] the deadly weapon or dangerous instrument element makes obvious that the statute requires the use of violent force." *Id*. Singh is distinguishable because the requirement in § 120.05(07) that the assault be committed when the defendant is confined in a correctional facility, does not "make obvious" that this subsection of the statute requires the use of violent force. To the contrary, the offense can be based on causing any degree of physical injury to another person.

### 2. The Enumerated Offenses Clause

Second-degree assault under § 120.05(07) is not a crime of violence under the Enumerated Offenses Clause as it does not equate with the generic crime of "aggravated assault." Under the Model Penal Code, aggravated assault occurs when a person "(a) attempts to cause *serious bodily injury* to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life, or (b) attempts to cause or purposely or knowingly causes *bodily injury to another with a deadly weapon*." MODEL PENAL CODE § 211.1(2) (emphasis added); *accord Moring v. United States*, 2017 WL 4574491, at *3 (6th Cir. June 8, 2017) (adopting the Model Penal Code definition as the definition of generic aggravated assault for purposes of determining whether a state aggravated assault statute is a predicate offense). The LaFave treatise states that "[i]n all jurisdictions statutes punish, more severely than simple assault, such aggravated assaults as 'assault with

intent to murder' (or to kill or rob or rape) and 'assault with a dangerous [or deadly] weapon.'" LaFave § 16.3(d) (alteration in original).[4] The generic definition of aggravated assault thus requires at least an attempt to cause serious bodily injury or an attempt to cause injury with a dangerous weapon. As discussed above, second degree assault under § 120.05(07), does not require either, and therefore does not equate with "aggravated assault" under the Enumerated Offenses Clause.

## IV. CONCLUSION

For the foregoing reasons, New York Penal Law § 125.20(01) and § 120.05(07) are not crimes of violence for sentence enhancement purposes. Defendant's base level offense is fourteen.

Dated: October 16, 2019
      New York, New York

                                    LORNA G. SCHOFIELD
                              UNITED STATES DISTRICT JUDGE

---

[4] The treatise also states that in "some jurisdictions one form of aggravated assault is where the assault is upon some particular type of person (e.g., a law enforcement officer)." LaFave § 16.3(d). This form of assault is not relevant to the current matter and not further addressed.